IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LARETTA MUSICO                                                               PLAINTIFF

V.                               NO. 15-5178

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration             DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Laretta Musico, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

Plaintiff filed her application for DIB on January 19, 2012, alleging disability beginning December 31, 2011, due to neck injury, left shoulder problems, Hepatitis C, fibromyalgia, left knee problems, and migraines. (TR. 8, 167, 171). An administrative hearing was held on August 19, 2013, at which Plaintiff appeared with counsel and testified. (TR. 26-78).

By written decision dated January 22, 2014, the Administrative Law Judge ("ALJ") found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – disorder of the left shoulder status post-surgery, disorder of the

1

back, disorder of the neck, disorder of the left knee status post repair, and fibromyalgia. (TR. 10-11). After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (TR. 11). The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work work as defined in 20 C.F.R. §§ 404.1567(1) except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the left upper extremity.

(TR. 11-18). With the help of the vocational expert ("VE"), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform her past relevant work, but that there were other jobs existing in significant numbers in the national economy Plaintiff would be able to perform, such as telephone solicitor, and receptionist or appointment clerk. (TR. 18-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied her request on June 9, 2015. (TR. 1). Subsequently, Plaintiff filed this action. (ECF No. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (ECF Nos. 9, 10).

**II.    Evidence Presented:**

The record contains evidence that Plaintiff has suffered from chronic pain in her neck, back, and left shoulder for many years prior to her alleged onset date. (TR. 815-1181). Plaintiff was also diagnosed with type I hepatitis C by Dr. Gary Thomas as early as October 23, 2003. (TR. 263).

Plaintiff's primary treating physician, for many years before her alleged onset date and during the relevant period, is Dr. Jeff Honderich. Plaintiff maintained a regular monthly

appointment with Dr. Honderich. Dr. Honderich primarily treated Plaintiff for chronic neck and shoulder pain. (TR. 273-529, 607, 732-79, 1184). Plaintiff routinely rated her pain at her visits with Dr. Honderich between a six and a ten on a ten-point pain scale. Dr. Honderich's objective physical exams also routinely showed Plaintiff had decreased range of motion of her cervical spine and left shoulder, that neither fully rotated or abducted, and that Plaintiff's cervical spine in particular did not fully flex, extend, side bend, or rotate. (TR. 314-20, 736). Dr. Honderich also routinely noted that Plaintiff used tobacco and his objective medical exam occasionally showed Plaintiff had decreased breath sounds in her lungs. (TR. 285-91, 328-38, 733, 738). On February 14, 2011, Dr. Honderich stated in his notes that Plaintiff reported she "missed work the last 2 weeks because of exacerbation of her chronic neck pain resulting from an on-the-job injury several years ago at the post office." (TR. 303-13, 735). On March 14, 2011, Dr. Honderich opined in his notes, "she has had surgery in the past. She probably needs surgery again." (TR. 314-20, 736). On April 11, 2011, Plaintiff complained of leg swelling and a rash. (TR. 321-27, 737). Dr. Honderich diagnosed Plaintiff with ankle edema and stasis dermatitis and noted: "She states she works as much as 12 hours a day on her feet. She is a heavy smoker. We talked to her about circulation compromises which she is developing on her legs. She is not ready to give up smoking, however." Id.

On May 25, 2011, Plaintiff met with Dr. Gannon Randolph. (TR. 268). Dr. Randolph opined Plaintiff, "is still having trouble with neck pain and arm pain. She is not ready for surgery however." Dr. Randolph continued, "I offered again C-5-6, C-6-7 ACDF but she says she doesn't want to do this yet as I told her she would have to stop smoking in order to do this. She's going to see the Mercy Pain Center which I am going to refer her to for nonsurgical treatment." Id. In a note to Dr. Randolph on May 26, 2011, Dr. Stephen Irwin assessed Plaintiff

3

with cervical radicular pain and left sided neck pain and recommended a new MRI be obtained of Plaintiff's cervical spine and that she continue pain management with Dr. Honderich. (TR. 534-53).

On June 1, 2011, Dr. Honderich remarked that Plaintiff was losing a considerable amount of weight despite having a good appetite, and also noted Plaintiff was potentially suffering the symptoms of fibromyalgia. (TR. 339-49, 739). Dr. Honderich also changed Plaintiff's medication on June 1, 2011, to include Neurontin, and on June 6, 2011, Plaintiff stated she had marked improvement, but Dr. Honderich's records from later that month on June 27, 2011, indicate Plaintiff's relief from the pain was only brief and she was again rating her pain as a nine on a ten-point pain scale. (TR. 350-71, 740-41). An MRI was obtained of Plaintiff's cervical spine on June 7, 2011. (TR. 554-64, 676, 711). The MRI revealed Plaintiff had narrowing disc space at C5-C6 and C6-C7 with bilateral posterolateral osteophyte formation at C5-C6 as well as mild bulging of the C5-C6 intervertebral disc and moderate bulging of the C6-C7 intervertebral disc. Id. Dr. Glen Chitwood determined the findings were consistent with posterolateral disc protrusion on the left at C6-C7. Id. Plaintiff followed up with Dr. Stephen Irwin on June 13, 2011 and rated her pain as a seven on a ten-point scale. (TR. 656-79). Dr. Irwin noted Plaintiff had diminished range of motion of her cervical spine but rated her strength in her upper and lower extremities as 5/5. Id. Dr. Irwin assessed Plaintiff with cervical radicular pain and left sided neck pain and adjusted her medications. Id. Dr. Irwin also recommended a cervical epidural steroid injection but Plaintiff declined because she did not achieve positive results with the procedure in the past. Id. By November 14, 2011, Plaintiff stated she was no longer working on Mondays because work on the weekend was too

exhausting, despite her employer's willingness to accommodate her subjective complaints by reducing her job duties. (TR. 412-20, 747-48).

At the beginning of Plaintiff's alleged onset date, she had been off work for multiple weeks with a severe sinus and bronchial infection which persisted through much of January. (TR. 459-98, 753-58). On February 7, 2012, Plaintiff stated her left knee had recently begun bothering her more. (TR. 512-29, 761-62). An MRI was ordered and obtained on February 13, 2012. (TR. 580-90, 595-606, 674, 779). Imaging revealed what was described as, "fairly extensive edema signal intensity within the marrow space of the distal left femur posteriorly projecting 3cm cephalad to the distal femoral condyles consistent with a large area of bone contusion in this patient with a recent history of fall." Id. Plaintiff's fall had not been recent, however, and imaging showed no surface reaching tear or significant joint effusion. Id. The images also showed intact cruciate and collateral ligaments as well as intrameniscal degeneration of the posterior horn of the left medial meniscus. Id.

On February 21, 2012, Dr. Honderich completed a Treating Physician's Headache Form and stated Plaintiff had more than seven headaches per week each lasting between six to twelve hours. (TR.607). Dr. Honderich's other treatment notes do not indicate he treated Plaintiff for headaches to that degree, and instead show that Plaintiff only reported headaches secondary to her chronic neck and back pain and that Dr. Honderich possibly filled out the Headache Form based on Plaintiff's own subjective statements of February 15, 2012. (TR. 763-64).

Dr. Terry Stites conducted an orthopedic evaluation on March 5, 2012. (TR. 644-45, 718-19, 726). Dr. Stites noted Plaintiff had a mildly antalgic gate and recorded the following in his objective exam:

5

> Both lower extremities are examined and compared. Her pelvis is level, there are no step-offs in the spine. DTRs at the knees and ankles are normal. Distally there are normal peripheral pulse, motor, and sensory exams, without edema. Hip and ankle motion is full without crepitation or pain. Her hamstrings are mildly tight, symmetric. Knee motion is full 0-130 degrees. Stability tests are normal in all planes including posterior drawer. She has some tenderness over the posterolateral and posteromedial joint lines, a negative McMurray's and reverse. Her calf and thigh are soft and nontender. There is no effusion. She has mild patellofemoral crepitation bilaterally, without apprehension. She has a good quad set.

Id. Dr. Stites noted Plaintiff's left knee x-ray was normal but that her left femur x-rays showed non-distinct shadows which corresponded with the findings of her MRI and he recommended a follow up CT scan and bone scan. Id. Dr. Stites' impression was that Plaintiff had a possible torn meniscus or chondral injury but specified that his findings were not definitive based on the objective evidence before him. Id.

Plaintiff saw Dr. Knox of Neurosurgery Clinic, PA, on March 7, 2012, regarding her neck and arm pain. (TR. 609-12, 706-10). Dr. Knox diagnosed Plaintiff with neck pain, cervical spondylosis without myelopathy, cervical degenerative disc disease, cervical herniated intervertebral disc, and cervical radiculopathy based on a March 7, 2012 x-ray report. Id. Dr. Knox ordered Plaintiff to continue her current medication and to start water therapy, but she was not to lift over ten pounds. Id.

A CT scan on Plaintiff's left knee was obtained on March 13, 2012, as follow up requested by Dr. Stites on March 5, 2012. (TR. 617-22, 647, 724). Imaging revealed no acute fracture or knee joint effusion. Id. The MRI did show mild medial joint compartment narrowing and a 4.8mm subtle sclerotic focus in the medial femoral metaphyseal. Id. The CT scan was followed up by a whole body bone scan on March 19, 2012, which showed a likely degenerative small focus of left lower cervical spine abnormal uptake, and was otherwise unremarkable. (TR. 623-28, 646, 725). X-rays were taken of Plaintiff's lumbar spine and left

6

shoulder at Mercy Hospital Berryville on March 23, 2012. (TR. 630-31). Images of Plaintiff's lumbar spine showed mild levoscoliosis, osteopenia, mild degenerative changes, and constipation, but no acute fractures or dislocations. Id. Images of Plaintiff's left shoulder showed acromioclavicular and glenohumeral arthropathy. Id. Dr. Magness performed a general physical examination on March 27, 2012. (TR. 635-41). Dr. Magness diagnosed Plaintiff with chronic pain syndrome, fibromyalgia, posttraumatic mild degenerative joint disease of the cervical spine, left shoulder, and left knee, chronic fatigue, hepatitis C, COPD, tobacco abuse, and situational depression. Id. Dr. Magness noted Plaintiff suffered pain when walking on heels and toes and was unable to squat or arise from a squatting position. Id. Dr. Magness also noted Plaintiff had reduced range of motion bilaterally of her shoulders and ankles, as well as of her left knee. Id. Plaintiff also had reduced range of motion with regard to flexion, extension, and rotation of her cervical spine, and reduced range of motion with regard to flexion of her lumbar spine. Id.

Plaintiff met with Dr. Terry Stites on March 29, 2012, to discuss treatment options. (TR. 717). Plaintiff agreed to undergo an outpatient arthroscopy procedure on her left knee, but elected to monitor her other impairments without surgical intervention. Id.

On March 14, 2012, Dr. Honderich wrote in his notes: "has been absent from work at the post office for some time, due to neck and shoulder pain . . . She has been instructed by her neurosurgeon that she can work, but she cannot lift more than 10 pounds." (TR. 769-70). On March 28, 2012, Dr. Honderich noted Plaintiff reported she was applying for disability and did not plan to return to work.  (TR. 771-72).

On April 2, 2012, Plaintiff met with Dr. Cathy Luo, seemingly by accident. (677-80). In her notes, Dr. Luo commented:

7

> Pt reports she is not sure why she is here for pain management, that she thought she was coming in for an evaluation and physical for her disability. States she is happy to get her pain medications straight but does not want to try any injections/procedures that she had done back in 2006 as they did not benefit her. States she would like Dr. Honderich to continue writing her medications and will check with him to see what his thoughts are on continuing to do so.

Id. Dr. Luo conducted a physical exam of Plaintiff and noted she had decreased range of motion of her cervical and lumbar spine and left shoulder. Id. Her Spurling's test was positive on the left, her straight leg raise test was negative bilaterally, and Dr. Luo noted decreased sensation in Plaintiff's left lateral hand, lateral forearm, and lateral three fingers to light touch and pin prick tests. Id. Dr. Luo assessed Plaintiff with lumbosacral/thoracic radiculitis, lumbar spondylosis, displacement of a lumbar intervertebral disc without myelopathy, displacement of a cervical intervertebral disc without myelopathy, joint pain in the shoulder region, and migraine headaches. Id. Dr. Luo ordered a drug screen and adjusted Plaintiff's medications. Id.

Dr. Dan Gardner, a non-examining state agency consultant, completed a Physical RFC Assessment on April 3, 2012. (TR. 655-664). Dr. Gardner assessed Plaintiff with the RFC to perform light work with no other limitations. Id. On April 11, 2012, Dr. Terry Stites conducted an arthroscopy of Plaintiff's left knee with chondroplasty of the patella. (TR. 720-23). Mary Sonntag, Psy. D., conducted a Mental Diagnostic Evaluation on April 12, 2012, and did not diagnose Plaintiff with any mental impairment but assigned her a GAF score of 64. (TR. 666-69). Plaintiff followed up with Dr. Stites on April 19, 2012, regarding her surgery but Dr. Stites' record indicates they only discussed her surgery and planned a further follow up appointment. (TR. 716).

Plaintiff visited Dr. Cathy Luo again on May 2, 2012, and complained her medications had not been working well. (TR. 681-84). Dr. Luo noted:

> Asked Pt why she had returned [and] that when she had left last time she was insistent that Dr. Honderich continue to write her meds. Pt reports her current meds are not working and she has not been comfortable and she is just looking for relief. Pt reports having left knee sx on 4/11/12 and did receive an RX for hydrocodone from him. Pt reports she did take it and continued to take tramadol that she had from a left over RX. States pain meds are working but she needs something more for in between pain.

Id. Dr. Luo's objective exam revealed Plaintiff's paraspinal musculature and facet joints were tender to palpation, her range of motion was decreased, and a Spurling's test was positive on the left. Id. Plaintiff's lumbar musculature and facet joints were tender to palpation with decreased range of motion and her straight leg raise test was negative bilaterally. Id. Her right upper extremity strength was normal and her left upper extremity strength was 4+/5 with decreased range of motion in her shoulder. Id. Her left and right lower extremity strength was normal. Id. Plaintiff also had decreased sensation in her left lateral hand, lateral forearm, and lateral three fingers to light touch and pin prick tests. Id. Plaintiff also had an antalgic gait. Id. Dr. Luo prescribed OxyContin 10mg, adjusted Plaintiff's prescription for Percocet, refilled her prescription for Neurontin, and discontinued her prescription for Hydrocodone-acetaminophen. Id.

Plaintiff followed up with Dr. Stites on May 17, 2012, regarding her left knee surgery. (TR. 715). Dr. Stites reported, "her left knee is getting better. She has minor pain problems, therapy went well." Id. Dr. Stites' objective exam was normal but he stated she needed more quad work and reviewed Plaintiff's home exercise plan with her and the potential for a cortisone injection in the future. Id.

Dr. Jay Rankin, a non-examining state agency consultant, completed a Psychiatric Review Technique form on May 18, 2012, and determined Plaintiff did not have a medically determinable mental impairment. (TR. 685-98).

Plaintiff presented to Dr. Knox on May 24, 2012, and complained of continuing neck and shoulder pain. (TR. 703-05). Dr. Knox performed a comprehensive objective exam. Id. Plaintiff had moderate tenderness in the midline at C3, C4, C5, and posteriorly at C4. Id. She had mild to moderate muscle spasm bilaterally in a symmetrical distribution in the sternocleidomastoid and moderate muscle spasm in the trapezius. Id. Dr. Knox tested Plaintiff's active and passive range of motion and strength and found as follows:

> Active ROM. Flexion – restricted to 10 degrees, trapezius pain on the left only – Extension – restricted to 10 degrees, trapezius pain on the left only – Right lateral flexion – restricted to 30 degrees, trapezius pain on the left only – Left lateral flexion – asymptomatic. Right lateral rotation – restricted to 60 degrees, trapezius pain on the left only – Left lateral rotation – asymptomatic but restricted to 45 degrees. Passive ROM pain when rotating shoulder negative on right; negative on left. Muscle strength: right deltoid with 5/5 strength. Left deltoid with 5/5 strength. Right biceps with 5/5 strength. Left biceps with 5/5 strength. Right triceps with 5/5 strength. Left triceps with 5/5 strength. Wrist extension with 5/5 strength bilaterally. Grip with 5/5 strength bilaterally. No instability.

Id. Dr. Knox assessed Plaintiff with neck pain (cervicalgia), cervical degenerative disc disease, herniated cervical intervertebral disc, and cervical radiculopathy. Id. Dr. Knox recommended modifying Plaintiff's activities but the record does not contain a specific recommendation. Id. Dr. Knox, moreover, recommended Plaintiff avoid cigarette smoke, continue her conditioning program and home exercise, and continue her current medications, but to wean off of her narcotic pain medication. Id. Dr. Knox further opined, "I don't think surg would be in her best interest," although he did not specify the reason for his opinion. Id.

The record indicates Plaintiff did not return to see Dr. Honderich for medication refills until May 30, 2012, at which time, he remarked, "she has been getting by without her narcotic analgesic." (TR. 773). Approximately one month later on June 29, 2012, however, Plaintiff inquired about longer acting pain medicine and rated her pain as a ten on a ten-point scale.

10

(TR. 774-75). Dr. Honderich noted on July 27, 2012, that Plaintiff had an antalgic gate and was walking with a cane. (TR. 776). On August 23, 2012, Dr. Honderich remarked that Plaintiff "has quite severe degenerative joint disease, mostly in the neck and shoulder, but recently it has spread to her hips and knees . . . She is now using a cane." (TR. 777).

Plaintiff followed up with Dr. Stites on June 18, 2012, and complained of left knee pain. (TR. 714). Dr. Stites' objective exam revealed no swelling and full range of motion with mild tenderness over the joint line and a mildly positive patella compression test. Id. Dr. Stites gave Plaintiff a cortisone injection in the left knee. Id.

Plaintiff followed up with Dr. Honderich on September 20, 2012, and rated her pain as a ten on a ten-point scale. (TR. 778-79). Dr. Honderich noted Plaintiff had decreased range of motion of her cervical spine and left shoulder and reduced breath sounds. Id. He assessed Plaintiff's back pain as being only partially controlled and ordered refills of Plaintiff's medications. Id.

Dr. Norcross, a non-examining state agency consultant, completed a Physical RFC Assessment on October 25, 2012, and determined Plaintiff retained the RFC to perform light work but with some limitations. (TR. 786-93). Dr. Norcross determined Plaintiff was not limited in her ability to push, pull, handle, finger, and feel, but that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl, and was limited in her ability to reach. Id. Dr. Norcross also determined Plaintiff had no visual, communicative, or environmental limitations. Id.

Plaintiff saw Dr. Margaret Ellis on May 3, 2013, who performed lab work, but Dr. Ellis' objective exam was normal. (TR. 1186-91). A CT of Plaintiff's chest was performed on May 22, 2013, to investigate tobacco use disorder, which showed no evidence of any acute

11

abnormality. (TR. 1192, 1199). Plaintiff again visited Dr. Margaret Ellis on June 7, 2013, and complained of neck pain. (TR. 1193-94). Dr. Ellis stated in her notes, "States that she [Plaintiff] is still sneaking cigarettes." Id. Dr. Ellis' objective exam was normal. Id.

### III.    Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

12

clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v).

**IV.    Discussion:**

Plaintiff argues in this appeal that: 1) the ALJ disregarded the Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms solely because he deemed it inconsistent with the medical evidence; 2) and, the ALJ did not base his determination of the Plaintiff's RFC on all of the relevant evidence in the record when he found that the Plaintiff could perform sedentary work. (ECF Nos. 11, 12).

13

### A. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003). The ALJ's credibility determination is entitled to deference if the ALJ provides good reasons and the determination is supported by substantial evidence. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." quoting Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006)).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. Plaintiff's reluctance to stop smoking was only one of numerous factors considered by the ALJ. While this Court agrees with Plaintiff that the record contains several valid reasons put forward by Plaintiff to elect to forgo further surgery, and that the record does not indicate Plaintiff's treating physicians prescribed that she quit smoking or counsel her that continued smoking would exacerbate the impairments for which she now seeks benefits, the ALJ did not end his

analysis with the sole issue of smoking. Any error which the ALJ may have committed by relying on Plaintiff's refusal to quit smoking to discredit her testimony regarding her pain and limitations does not spoil the remainder of the ALJ's analysis. The ALJ considered the objective medical evidence in the record, particularly notes from Dr. Stites in April through June of 2012, which indicated Plaintiff's left knee was doing well after surgery and that Plaintiff was tolerating therapy well despite some pain. (TR. 714-16, 720-23). Dr. Stites recommended conservative treatment, principally cortisone injections, to manage the Plaintiff's pain. (TR. 714-15). The ALJ also noted that Dr. Knox recommended water therapy for the Plaintiff and limited the Plaintiff to lifting no more than ten pounds, which suggested the Plaintiff was not as limited as alleged. (TR. 609-12, 706-10). Further, the ALJ observed that Plaintiff's medications made her sleepy. (TR. 13). The ALJ also considered Plaintiff's activities of daily living and noted that Plaintiff reported in her function reports completed on February 6, 2012, and September 20, 2012, that she was able to preform a range of activities with some limitation:

> she did not have any problems in performing personal care. While she was limited in her ability to do household chores with repetitive motions, such as vacuuming and mopping, she could still do laundry and light housekeeping. She will spend time with others and will go to church and Walmart. She had no problems with following written or spoken instructions and could handle changes in her routine.

(TR. 15). The ALJ did not entirely disregard all of Plaintiff's subjective complaints, but the inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. See Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991).

15

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that the ALJ provided good reasons for discounting Plaintiff's subjective complaints and that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible.

### B.     ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff's argument with regard to the ALJ's RFC determination is essentially a restatement and elaboration of her argument with regard to the ALJ's analysis of Plaintiff's subjective complaints of pain. Overall, the ALJ gave significant weight to Plaintiff's treating physicians and her own subjective complaints in determining her RFC. The ALJ, however, repeatedly noted that the treating physicians' notes and the Plaintiff's own testimony with

16

regard to her activities, did not support any greater limitations than those specified in the ALJ's RFC determination. For example, the ALJ discussed the findings and opinions of Dr. Honderich, Plaintiff's primary treating physician, in detail and determined "substantial weight is given to the opinions expressed by Dr. Honderich, but they do not support a finding that the claimant is more limited than found in the residual functional capacity." (TR. 16-17). The ALJ discussed Dr. Knox's findings and opinions, incorporated Dr. Knox's limitations into his RFC determination, and concluded, "Dr. Knox is a neurosurgical specialist, and he thoroughly evaluated the claimant and reviewed imaging studies in reaching his conclusion. Consequently, his opinion is given substantial weight." (TR. 17). The ALJ also incorporated Dr. Magness' limitations into his RFC determination and stated:

> Based on his findings, Dr. Magness thought that the claimant had severe limits in the abilities to lift and carry and moderate to severe limits in the abilities to stand and walk. In addition, Dr. Magness thought that the claimant had moderate limits in the ability to handle. Those limitations are taken into account with the finding that the claimant can only perform work at the sedentary exertional level. Given the claimant's moderate limitations in the ability to handle, she is limited to occasional overhead reaching with the left upper extremity.
>
> Dr. Magness' conclusions are given substantial weight since he evaluated the claimant in person for the purpose of establishing her limitations. In addition, his conclusions are consistent with the level of treatment that she received and her subjective complaints of pain. Dr. Magness' report, though, cannot be given greater weight, and it does not support any greater limitations because it does not specifically state the extent of the claimant's limitations or specify that the claimant is more limited than has been found.

(TR. 17-18) (citations omitted). The ALJ also discounted the opinion of the state agency medical consultant, Dr. Norcross, because his findings that Plaintiff retained the RFC for work at the light exertional level were inconsistent with the opinions of other treating and examining physicians. (TR. 18).

The ALJ also referenced Plaintiff's reported activity level with regard to the RFC for sedentary work. The ALJ stated:

> The claimant testified that she used a cane, and on August 23, 2012, Dr. Honderich noted that she was using a cane after her degenerative joint disease in her neck and shoulder had spread to her hips and knees. Even using the cane at that time, she had an antalgic gait. That limitation, though, is accounted for with the finding that she can only perform work at the sedentary exertional level, which only requires standing and/or walking for two hours during an eight-hour day and that limitation is consistent with the level of household chores that the claimant said that she did.

(TR. 15-16). (citations omitted). On Plaintiff's Adult Function Report completed February 16, 2012, Plaintiff reported she spent thirty minutes each day preparing her own meals and an hour each day doing household chores such as laundry and the dishes without help or encouragement. (TR. 190). She also reported that she had no difficulty managing her personal care such as dressing or bathing herself or going to the toilet, that she went outside daily, that she was able to go out and drive a vehicle alone, that she shopped approximately an hour each week, that she visited with others twice weekly, and that she went to church two to three times per month, activities which all imply at least some amount of standing and/or walking. (TR. 188-95). The fact that Plaintiff attempts to maintain her home and does her best to engage in ordinary daily activities is not in and of itself inconsistent with her subjective complaints, and does not require the ALJ or this Court to find that she is able to engage in substantial gainful employment, but her own descriptions of her limitations and those limitations resulting from symptoms such as pain are factored into the RFC assessment. See Draper v. Barnhart, 425 F.3d 1127, 1131 (8th Cir. 2005); Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(3). The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many treating physicians, surgeons, and specialists, as well as those of the non-examining state

agency consultants, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### C. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the duties of a telephone solicitor or a receptionist or appointment clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of December, 2016.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE